Your argument next in LaGloria v. United States, which is No. 075010. Now, in this case, I think you can take it as a given that everything said in the Conoco case about the merits of the 16203 issue, the PMM issue, will be deemed to have been made for purposes of this case. So if you want to say anything more on that issue, you're welcome to, but you're also welcome to go directly to the issues that are unique to LaGloria. Thank you, Your Honor, and I will do that with the Court's permission and proceed to the Minority Price Preference claim. LaGloria alleges, again for purposes of the motion to dismiss here, that the price in its contracts was reduced by as much as 10 percent because the government violated the equal protection component of the Fifth Amendment in the way that it awarded the contracts. LaGloria is seeking a remedy for an illegal contract price. It alleges that the violation of law in the solicitation and award of the contract gave rise to an illegal price in an existing contract. It is therefore seeking a remedy under its contract to correct that illegal price. And Judge Hewitt here dismissed the lack of subject matter jurisdiction. And the two cases, the cases you rely on appeal principally are LaBarge and Gould, correct? Correct, Your Honor. It seemed a little odd to me. I just wondered if you had, I mean, she otherwise wrote a very thorough opinion, and I don't think there's any reference to either of those cases or that line of reasoning in our case law. Was that presented to her? Well, certainly Gould and LaBarge were presented to her. Yeah, because she didn't deal with that issue. The issue that principally you raise on appeal seems to not be one that she actually dealt with. I can represent to you as an officer of the court that those cases were discussed in detail in the briefs below. I had something of a loss to understand why they weren't. They were addressed, as you see, well, I guess in the Tesoro decision where these issues were. No, but you agree with me that they weren't addressed in her opinion. I have to go back to this, but not in any meaningful, but I mean in an extensive detail manner. I think the court's ruling there, in effect, that the violation of law in the award of solicitation of contract cannot give rise to a claim under the Tucker Act, I think just would rewrite existing law. I think there is simply too much authority in this court. It says that where there is a causal relationship, as articulated in Gould and then later adopted by the court in Sesno, that you do have a claim under the Tucker Act. Whatever claim you may have had in terms of a bid protest, once the contract is awarded, if you allege that that price was diminished by unlawful acts, you have a separate and independent action to recover a lawful price. Or stated differently, the government is not permitted to retain the benefit of an illegal price simply because it was not caught or precluded in the solicitation process. Once again, the issue is that the law controls. Now, just as a kind of technical matter, I'm getting confused between these cases. We established in the prior case of Conoco, and I don't want to go back there, but we established that you had not raised, on appeal at least, the issue of the small business auction piece of it. It was just the equal protection minority set-aside. What's at stake in this case then, just so I can be clear? Did you just dismiss for lack of subject matter jurisdiction the equal protection set-aside issue, or are we also raising the small business auction? We are raising the illegal auction claim here. She dismissed for lack of jurisdiction both the minority price preference and illegal auction claim. She did not reach the merits of either claim. The government, as you know, has argued the merits of the illegal auction claim here, although it was not reached by the court below. I think there has been perhaps some confusion because the Fifth Amendment is implicated here, some confusion below, and the notion that you can't bring a cause of action for violation of the Fifth Amendment itself, because it is not a legally-indating constitutional provision for purposes of the Tucker Act. We have no quarrel, obviously, with that well-established holding. The distinction here is that we are not bringing a claim under the Fifth Amendment. We're bringing a claim based on the contract. I think in Google, the court made that very clear. It said they're not bringing a claim under the statute that requires a stable design. They're bringing a claim under their contract. And the piece of the contract here is, because you did say you've clarified that. I mean, she goes through in her opinion. The piece of the contract here is the price. Correct. The price was illegal. It was unlawfully diminished because of the government's violation of the law. And thus, again, I would point similarly to Cessna, which was a case involving allegations in violation of the Antideficiency Act. But again, there was clear, not only defined jurisdiction, but to say this is not a claim under the Antideficiency Act, but rather a claim under the contract for an unlawful price. Indeed, there's no way in a case like Cessna, where you have the Antideficiency Act, which precludes the payment of money, that you could find that as a money-mandating statute. But the court said, well, that's not really relevant here, because it's not a claim under the Antideficiency Act. It's a claim under the contract in the Tucker Abbey case, separate jurisdiction there. What's a little confusing is in the complaint itself, and I think the judge required some clarification at some point, because in the complaint itself, your Fifth Amendment claim alleges that DESC knowingly awarded and administered plaintiff's contracts in violation of the Equal Protection Clause. So there you're talking about the administration and awarding of that. Now, and I think before Judge Hewitt, at least as she explained it, you were talking about the unconstitutionality of the price clause in the contract, which the two notions seem a little different, right? Well, I would point to some other language in the complaint that I think was not perhaps fully comprehended by the lower court. But we state for example at appendix page 62, as a result of DESC's language of 10% price preference for minority-owned suppliers, DESC paid plaintiff ConocoPhillips prices for military fuel that were below fair market value. I mean, there's an express causal link alleged in the complaint. Yeah, but that seems to be under, in fairness, that seems to be under the whole discussion of the PMF, right? I think, Your Honor, you'll find it's under a separate heading for… Well, distortion of the market value of military fuel. Let me look at page 62 here, Your Honor. Oh, I'm sorry. You're right. It says in other ways besides that. You're right. You're right. I'm looking at paragraph 26 in addition. I do think that a fair reading of the complaint is that we allege that this violation of the Equal Protection Proponent Amendment caused the diminution in the contract price. I think that under well-established authority here that there is jurisdiction for that claim. Moving on, unless there are other questions on the minority price preference claim, to the illegal auction claim. Again, I think the jurisdictional issue, which is the issue upon which the court ruled, is essentially identical to that of the minority price preference claim in the sense that we allege an illegality in the award or solicitation of the contract that unlawfully diminished the contract price. And as the court has alluded to, I would point to LaBarge, which involves violation of some of the very same regulations, 16.510 on the prohibitions of auctions, that we allege were violated here. And the court expressly found that there was jurisdiction there, albeit under the Contract Disputes Act, but I think the reasoning of the court there is equally applicable under the Tucker Act and I think has largely been followed by this court. So I think that those two issues jurisdictionally are the same and that, again, the authorities of this court made clear that an allegation of illegality in the award or solicitation of the contract that gives rise to an illegal price is within the jurisdiction of the Tucker Act. The government has asked the court to proceed with the illegal auction claim on the merits, although the federal claims below did not reach the merits. They have refused to address those issues with the court now. The Office of Federal Procurement Policy Act precludes the disclosure of bidder proposal information or source selection information during a procurement that relates to award or the ability of contract. I don't think that there is any real question but that the government does what the act says they should not do. They take the bid price or adjusted bid price of large businesses and offer it to small businesses and say if you'll match it, we'll give you the contract award. I don't think the real issue here is whether the Office of Federal Procurement Policy Act says that you can't do that. I think that it says that you cannot do that. The question is does this practice fall within the authorized exception of the Office of Federal Procurement Policy Act. In our view, it does not. It cannot because the way the government conducts this auction is expressed and prohibited by the FAR. Once again, the FAR says that when you're going to do these parallel procurements, you have to award the contracts first to the large businesses and when you're done, go and award to the small businesses. In that sense, the procurement is over for the large businesses and we don't have this issue of disclosing their price while the procurement is ongoing. Also, the FAR says that you cannot go back and forth between the large and small businesses. You can't shuttle back and forth because that allows you, really the government, the leverage of the very evil that happens here is that you are in essence telling the large business if you don't bid low enough so that the small business here will decline the contract, you're out of the picture. Again, I don't think there's any dispute that what the government does is inconsistent with the FAR. The government admits it, the General Accounting Office has found it. I would point out that the General, I'm sorry, no longer the General Accounting Office. Governmental Accountability. Accountability Office, I don't want to have it die hard, I'm sorry. That case, that decision does predate the Office of Federal Procurement Policy Act. So it talks about the FAR provisions and it says that DESC is violating the FAR provisions and of course has no bearing on compliance with the Office of Federal Procurement Policy Act which was not applicable to that contract. It was an 1887 contract and we left PPAs as it were in 1888. Again, I think the whole issue of is the government authorized to do this is really resolved by the deviations the government alleges that it has deviations which permit it to depart from the FAR. If they're alleging that they have to have permission to depart from the FAR, then they are conceding that they do in fact depart from the FAR. And we would take on the deviations in the first instance by saying where are they and what do they say. Conspicuously the government has failed to proffer them or even to allege that they're not available. And so they're going to come in in the first instance and say our conduct meets the authorized exception of PPA. Because we have deviations, well they've got to show us the deviations and show us that they authorize them to do what they hear. In addition, I think the reason frankly that they have not shown us the deviations is that they are nowhere published in the Federal Register and we cite authority for the proposition that class deviation of the type that they're talking about here by federal law and by regulation has to be published in the Federal Register. Finally, with regard to the deviations, we would make the point that at some level you're rewriting the statute and you can't do that by regulation or by deviation. We would submit that what's going on here is fundamentally cutting across the core of the statute. Congress said the integrity of federal procurement and everyone being on a level playing field is paramount here and we're not going to have the government selectively disclosing bid prices from one party to another, giving one party an advantage over the other. It pollutes the entire process. And I would submit that even if there were deviations, that these deviations here cut so fundamentally across the express language of the regulation that they would not be permitted. They would, in effect, be rewriting the law. I think what this authorized exception really had to do with was situations where the government hires an outside expert to help them evaluate the bids. Well, obviously they're going to have to disclose that information. They're not talking about disclosing it from one bidder to the next  to help the government evaluate the bids. There are circumstances where the courts have upheld disclosure, again, of bid prices. LaBarge was one of them. And there they said where the disclosure is required to comply with a fundamental aspect of procurement policy, that there's equal disclosure to everyone, then a disclosure of a bid price is permitted. But we've got to have this fundamental procurement policy that is thwarted by the failure of disclosure for it to meet the authorized exception here. Here not only do we not have a fundamental policy that requires disclosure, indeed we have a fundamental policy in FAR regulations that precludes it. Mr. Burt, you've run through your time. If you have one concluding comment that you would like to make, we will give you back your couple of minutes of rebuttal time. If I could save a couple of minutes for rebuttal. All right, we'll give you a couple of minutes back for rebuttal. Thank you. Mr. Gilliam. Mr. Burt gave a wonderful speech, but not about this case. What the judge below had to deal with was the fact that there were no facts and evidence to establish the court's jurisdiction. We challenged the court's jurisdiction basically saying that the allegations appeared to be one that really were a facial attack. And I think our construction of the complaint is fair and it's worth reading. First of all, this is based on, and this is what the court was confronted with, which is what LaGloria first actually alleged, then what it actually proved. So section 69 is where they began their auction complaint. What page are you on there? I'm at page 64 of the LaGloria complaint, LaGloria appendix. We began our analysis here, and that's where the court began its analysis. The complaint reads, D.E.S.C. knowingly awarded and administered each of plaintiff's contracts in violation of the OFPPA Act and its implementing regulations by using prohibited auction techniques, whereby plaintiff D.E.S.C. awarded contracts to bidders that agreed to match other bidders' price. Now although it said that the contracts were administered incorrectly, as we'll see in a moment, there's really no evidence to that effect, this appeared to be, and we said this in our moving brief, that what this really was was a facial attack on the D.E.S.C. set-aside program itself, and then we got into the merits of the auction question, and we proffered a proposed finding, which I'll show you in a minute, and show you how LaGloria responded. So we'll see if we can get to that now. Page 749, we then, understanding that this complaint really was an attack on the award system itself, offered a fairly simple proposed finding of fact, which we then proceeded to argue required the dismissal of this count. It's at page 749 of the LaGloria appendix. We cited specifically to the FAR provision, we cited specifically to the D.E.S.C. provision, which was in the solicitations, and we said that where there's a set-aside failure, the quantities are awarded to the low offeror for the basic quantity rather than being re-solicited as a new requirement. This procedure avoids the delay that would take place in re-soliciting set-aside failures, and we provided evidence. We identified this as being pursuant to a deviation, and we supplied the clause itself, which says deviation in parentheses. The deviation does not pertain to the actual portion of it itself, which is authorized and we cited to the Government Accountability Office, formerly the Government Accounting Office study, which reviewed this process and found it to be legal. LaGloria's response only was that it needed additional evidence to respond, and otherwise we make allegations concerning the law. And it then provided a 56-F affidavit that made no attempt to explain what it might learn other than to say it required this additional information. So this is an argument on the merits. So you responded on the merits, on the legality of the process. Well, we explained that this was not an auction because if you actually track the documents, and so on and so forth, the allegation basically is, as we understand it from the briefs and so forth, well, it's found a complaint paragraph 40, and this is at page 64. The court said that it improperly solicited and rewarded portions of the procurement set aside for small businesses together with those for large businesses. The question is why wasn't that an argument that Judge Hewitt was entitled to evaluate? You may be right that it isn't an auction, but what Judge Hewitt is saying is I can't touch it. Eventually she dismissed it on those grounds. And why is that right? As opposed to the question of whether it's an auction or not, why is it the case that the Court of Federal Claims does not have the authority to address the question of whether there was an improper auction in this case? Because when you say this case, we're referring to these contracts. Sure. What we say was this is a broadside attack on the program generally, simply the way that it would work as follows. On a given contract, if, and there's no evidence that's occurred with respect to any of these particular contracts, certainly there's no evidence of dues based on our challenge, which required LaGloria to come forward and show a factual predicate for the court's jurisdiction, that is that its contracts were affected by the allegations. So even setting aside the merits of the allegations, we were waiting for a declaration saying, now wait a minute. We actually offered to sell fuel to, say, Tinker Air Force Base in 1994. Pick your year. And in that year, however, in that particular solicitation, DESC set aside 10%. And realizing that there was going to be this 10% set aside, which we believe is illegal and violates our Fifth Amendment rights, we then had to sharpen our pencils and lower our bids. Well, wait a minute. We're getting Fifth Amendment, I mean, small business versus minority. The Fifth Amendment is not in the small business. It's the regulatory. It's easy to get the wires crossed there. All right. The set asides work like this. The government decides... X amount is going to go to small businesses if they can meet the... Right. OK. The first thing it does is conduct the bids among the non-small businesses, perfectly legitimate. It determines for a particular location what it's going to cost the government to get fuel to that location, let's say Tinker Air Force Base. It's $0.50 plus $0.02 for delivery. Let's say $0.05 for delivery. That's $0.55, the lay-down price at Tinker Air Force Base. Now it looks at, let's say that that particular requirement is determined to be that which the government seeks to set aside. So now it negotiates. It does not say that LaGloria has given us $0.55. It's bid $0.55. Now taking that total cost, the lay-down cost of the government, $0.50 for LaGloria plus 5% then seeks to negotiate with the small business a price of $0.55 laid down at Tinker Air Force Base, Oklahoma. So the small business says, I'm going to sell it to you for $0.53, $0.54, $0.55, but I'll cover the transportation. It's matched the price. It doesn't really know what LaGloria's price is. The government, however, is now authorized to accept that because knowing that the government's total lay-down price to a large business is $0.55, small business bidder has met the $0.55 price. It's negotiated at that $0.55 level. It said, fine, you can have that price. If that was the fact in anyone with respect to anyone of these years, then there's no contract that was affected at all because there's a successful set-aside and LaGloria is not affected. Since we don't have an allegation concerning which particular contracts actually were affected, the court doesn't have a contract before it. That's affected by this allegation. In particular year, the example that I gave, LaGloria having bid $0.50, say the government picks up the $0.05 for transportation, and the government has a set-aside failure because nobody can meet this total $0.55 lay-down price. So now the government comes back to LaGloria, and let's just say further that LaGloria actually is the low bidder. It has, in fact, succeeded in outbidding all the other large competitors, not allegedly. Then the government goes back to LaGloria and says, congratulations, you wanted this, you wanted to sell us gasoline, it's $0.50, we're going to buy gasoline for you at $0.50. There's no further negotiation saying, you know, we could have got this for $0.54 from a small business because they were going to pay the freight. So why don't you lower your price? They simply award at the offered price. Now a third possibility is with a set-aside failure, the government goes now back to the non-smalls, and LaGloria has not won. LaGloria is not having a low price, and so it goes somewhere else. All of these are live possibilities with this program. If you want to attack it on its face, go to a district court and attack it on its face, or claim that you want to award a specific contract in the Court of Federal Claims and launch a bid protest. But if you want to allege, as LaGloria now insists it's doing, that you have a contract that was affected by a non-set-aside failure, first show what that contract was, that there was a set-aside failure, and that you were awarded the contract. And then at least allege that you were harmed by an affidavit, a declaration saying, and in order to somehow gain that system, we consciously lowered our price. Now as we've explained with the system, there's no reason why you would lower your price because you really have to beat out the bigs, not the smalls. Nonetheless, maybe there's some reason LaGloria actually figured it had to do that, and perhaps Lawrence and Clarence could have explained it to the Court of Federal Claims, but it didn't. So we had no contract before the Court of Federal Claims actually even alleged to have been affected by the small set-aside failure, even if the government's small set-aside program is completely illegal. That's why the Court had no jurisdiction. And what about the equal protection aspect of it then, the minority set-aside? I mean the argument is, I mean she identified the clause in the contract is the price clause, and they claim that in the absence of the minority set-asides, that price would have been 10% higher or whatever the number is. Why isn't that sufficient to look at the barge and gruel to establish subject matter jurisdiction? Same reason. Same reason I just gave you for the small set-aside. There's no allegation that a particular contract in this case was affected by the government's program. We've not met the allegations here for sure. There's an allegation here that the government's small disadvantage business, 10% price preference, is discriminatory in violation of the Fifth Amendment. We did not argue one way or the other. We simply said, again, reading the actual allegation here, paragraph 41, page 64, DESC awarded administered contracts in violation of the Equal Protection Amendment by extending to minority-owned businesses bidding preferences not narrowly tailored, and so forth. We said and offered, again, a proposed finding of fact that offered simple, uncontroverted facts. Gloria's response simply was these are conclusions of law. We agreed. We stated that this appeared to us to be a facial attack on the program. The court read it the same way. When Gloria was offered the opportunity, in fact is required now as the claimant to step forward with jurisdictional facts to establish the court's jurisdiction and say, well, no, there is a contract. We're talking about one of our contracts that actually was awarded, and we had to lower our price. Didn't they say that? I'm looking at paragraphs 27, 28, and 29 on appendix 62 that preceded that. Why isn't that? I mean, those paragraphs allege that this happened in this case, right? Or why am I missing? Well, 27 is, of course, the options. We're not talking about the small business set-aside. So it's 28 and 28. I don't have an argument. 27, as you can see, is quite broad. We read this and believe, again, that this was part of our reason for seeing this was a facial attack. Well, 29, it says, as a result of the auction and its 10% price preference of minority-owned suppliers, DESC paid plaintiff prices for military fuel that were materially far below the market. I mean, they've made that allegation. Why isn't that enough to establish that there was a connection between their attack on this program and what happened to the contract in this case? Frankly, our response with regard to that was, as we've said with regard to PMM, that there was no—that just fails to state a cause of action. There really is no right to fair market value or fair and reasonable prices. Do you mean that if this had said materially below what they would have paid otherwise, then it would be okay, but the language that was used is jurisdictionally flawed? That would certainly be closer to the allegation we would expect to see, and then expect to see, upon our challenge, at least a declaration showing that there was actually a contract in this case. And declarations were often, but none of them went to this at all. It's curious that, in fact, the lawyer was able to offer, although identical, conclusory allegations in regard to PMM could not offer any at all with regard to this one. Anyway, that's the way we read this, and apparently the court agreed and read it the same way. Well, the paragraph does talk about the fact that the ESC paid plaintiff prices for military fuel. That certainly was made pursuant to a contract. That implicates the contract, does it not? It does. And then I'd say that can be dismissed on the grounds that it fails to state the cause of action because there's no requirement under this program or any other rule of law for the court to be paid quote unquote fair market value. In other words, I'd still say, still arguing 12 v. 1, but with an alternative 12 v. 6, that there's no allegation that they actually reduced their prices as a result of this or failed to supply any evidence to the effect that they did. Did the government also preserve a waiver argument, kind of the waiver argument that Judge Weiss decided in Conoco as an alternative in this case? We agreed to waive on this case as an alternative basis before dismissing all of these claims. Yes, Your Honor. The other thing, we were talking about Gould briefly. We treated Gould as a different case. The Gould case appeared to us to be more of a garden variety. In Chang's case, Gould claims that its contract really was to provide to build radios, or was in that case, based upon a design provided by the government with every expectation that design through Bancroft radios, that there was every expectation that the design supplied by the government was sufficient to go right to production. In fact, what it required was to do some development as well as production. To that extent, it really presents a garden variety. Chang's claim, well within the court's jurisdiction. Labarge presents a clear allegation of clerical error within this court's mistaken bid jurisprudence. To the extent that the mistaken bid resulted in a clearly low written price than was intended, that stated a cause of action as well because its pricing provision was directly affected. Here, we've seen no evidence that anything the government did with respect to these programs affected the actual prices of contracts with three of the important federal banks. Okay, thank you, Mr. Gillian. Mr. Burton, a couple of minutes. Quickly on the record, if I may, I would like to invite the court's attention to paragraph 31 of the complaint. I'm sorry, which paragraph? Paragraph 31. Where we identify all of the contracts that are at issue here. All of the contracts are alleged to be illegal. I think the assertion that we haven't identified contracts is not consistent with the record. I would also invite the court's attention to paragraph 43 of the complaint which in addition to the various allegations we've discussed, we also specifically allege that this damaged us. I think that meets our requirements under the rules to plead conduct and prove that it's damaged us. When you say this, are you referring back to the minority set-aside? Are you referring to the auction small business? Paragraph 43 is part of the illegality count. Did you say 43 or 33? 43. Oh, okay. That's the end of the illegality count. We allege all of the illegalities, including both that you've mentioned, and then say with regard to all of those illegalities the government's violation of the law pushed the price down but damaged us. With regard to the record, again we are on a motion to dismiss. I would point to appendix page 755 where the government stipulated, stipulated is perhaps a wrong word, stated that they were not challenging the factual allegations in the complaint. So they're sort of shifting positions a little bit like a whirligig here in the sense that having below conceded all the factual allegations I think now finding that that's problematic for them and trying to come back and challenge the very allegations that they conceded. I would also cite the Shore v. Rhodes case in the Supreme Court stating that it's well established on motion to dismiss, including one for a lack of subject matter jurisdiction that the allegations in the complaint should be favorably construed, if not put in evidence, controverted by evidence, by the moving party. There's no allegation here that they have put in contested, with evidence, our allegations that we were damaged by the government's violation of the law. Thank you and thanks to both counsel for working over time and helping the court in cases like this. Your Honor, the court will adjourn until 2 o'clock p.m.